# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DAPHNE TURNER-GOLDEN AND SULLISTINE BELL, Citizens and Residents of Memphis, Tennessee, And CITY OF MEMPHIS, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil No. 3:12-cv-00765<br>) Judge Aleta A. Trauger |
| TRE HARGETT, Secretary of State, MARK GOINS, Tennessee Coordinator of Elections, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM

On July 26, 2012, the plaintiffs filed a Second Application for Preliminary Injunction (Docket No. 11), on which the court held a hearing on July 31, 2012 (hereinafter, "PI Hearing"). Given the time sensitivity of the issues presented, the court ruled from the bench at the conclusion of the hearing and denied the plaintiffs' request for a preliminary injunction. This Memorandum further explains the court's reasoning.

## BACKGROUND

### I. Factual Background

In 2011, the State of Tennessee enacted new voter registration requirements, codified at Tenn. Code Ann. § 2-7-112, which, for the first time, imposed a photo identification ("photo ID") requirement on Tennessee residents seeking to vote. This Tennessee voter identification law (hereinafter, "TVIDL") specifies certain categories of photo IDs that satisfy this requirement, including, *inter alia*, "a valid identification card issued by a branch, department, agency or entity

1

of this state, any other state, or the United States authorized by law to issue personal identification." Tenn. Code Ann. § 2-7-112(c) (2012).

According to the plaintiffs, approximately 390,000 voters do not have a photo ID that complies with the TVIDL, and only a fraction of those voters have obtained photo IDs since passage of the law. For example, as of the TVIDL's passage, 126,000 individuals over the age of 60 possessed driver's licenses without a photo and, therefore, were unable to vote under the current law, unless and until they obtained a photo ID consistent with § 2-7-112(c). Of these 126,000 individuals, fewer than 21,000 have since obtained a photo ID from the Tennessee Department of Safety ("DOS").

In an effort to address this disparity, on July 5, 2012, the City of Memphis Public Library system ("MPL") instituted a new program for its patrons, under which it began issuing library cards with a photo ID.[1] Under the program, residents can either continue to use their old library ID cards, which did not contain a photo, or they can obtain a new MPL library card with a photo (hereinafter, "MPL Photo ID Card"). To obtain MPL Photo ID Cards, residents are required to present forms of identification that comply with the requirements for obtaining a driver's license in the State of Nebraska. Residents of Memphis, Bartlett, and unincorporated Shelby County can obtain the cards free of charge. Between its inception and the date of the PI Hearing, the MPL issued approximately 1,100 MPL Photo ID Cards.

Plaintiffs Daphne Taylor-Golden and Sullistine Bell are two senior citizens of Memphis who are registered to vote. Both obtained MPL Photo ID Cards in advance of the August 2, 2012

---

[1] At the PI Hearing, the plaintiffs represented that, through this program, the City of Memphis and the MPL simply sought to "facilitate" implementation of the TVIDL.

election.  Before obtaining her new card, Taylor-Golden had been issued a photo ID by the DOS on January 18, 2012; however, just weeks before the election, Taylor-Golden's purse, which contained that card, was stolen.  Before obtaining her new card, Bell possessed only a non-photo driver's license issued by the DOS.[2]

After ascertaining that the MPL had been issuing photo identification cards, defendants Mark Goins, the Tennessee Coordinator of Elections, and Tre Hargett, the Tennessee Secretary of State, informed the Shelby County Election Commission that the MPL Photo ID Cards were not acceptable under the TVIDL and, therefore, directed the Commission not to accept these cards from potential voters.  When Taylor-Golden and Bell appeared at local polling stations to cast advance ballots in the August 2, 2012 election,[3] polling officials, in compliance with the defendants' instructions, refused to permit Taylor-Golden and Bell to cast regular ballots.  They did, however, permit Taylor-Golden and Bell to cast provisional ballots, which are segregated from regular ballots.

At the PI Hearing, the defendants pointed out that (1) Taylor-Golden and Bell, as citizens over the age of 60, could have cast absentee ballots in advance of the election pursuant to Tenn. Code Ann. § 2-6-201(5) (2012), although their time frame for doing so had closed by the date of the hearing; and (2) because Taylor-Golden and Bell were both already on file with the DOS, they could have obtained a free photo ID in advance of the election from the DOS after completing an application and signing an affidavit, without providing additional documentation.

---

[2]Tennessee residents over the age of 60 may elect to obtain a non-photo driver's license. *See* Tenn. Code Ann. § 55-50-323(a)(7) (2012).

[3]Tennessee permits "early voting," in which voters may cast ballots within 20 days of an election, subject to certain conditions.  *See* Tenn. Code Ann. § 2-6-102 (2012).

(*See., e.g.*, Docket No. 17, Ex. 1, Dodd Decl. ¶ 7.)

II.     **Procedural History**

Taylor-Golden, Bell, and the City of Memphis have filed suit against the defendants in their official capacities only, alleging that the defendants' instructions to the Shelby County Election Commission not to accept the MPL Photo ID Cards violated (1) the plaintiffs' rights under the United States Constitution, Art. I, § 2 and the Tennessee Constitution, Art. I, § 5, actionable under § 1983 (Count I); and (2) the plaintiffs' rights under the Fourteenth Amendment, and Articles I, § 5 and IV of the Tennessee Constitution (Count II).[4]

Taylor-Golden and the City of Memphis filed the original Verified Complaint for Declaratory and Injunctive Relief on July 24, 2012 (Docket No. 1), along with a Motion for a Temporary Restraining Order and Preliminary Injunction (Docket No. 2). On July 25, 2012, District Judge Kevin H. Sharp held a hearing on that motion, at which he denied the plaintiffs' request for a temporary restraining order and deferred a ruling on the preliminary injunction request until this judge, to whom the case was assigned, could hold a further hearing.

On July 26, 2012, the court ordered the plaintiffs to file any further request for a preliminary injunction by motion and ordered the parties to submit briefing on certain designated issues in advance of any hearing scheduled by the court. (Docket No. 10.) The plaintiffs accordingly filed the instant Second Motion for Preliminary Injunction (Docket No. 11), in

---

[4] The First Amended Verified Complaint for Declaratory and Injunctive Relief (Docket No. 33 ("First Amended Complaint")) does not state under what federal and/or state statute Count II is actionable, although the court construes this count as at least asserting an additional claim pursuant to 42 U.S.C. § 1983. Also, although Count II states that the federal claim arises under the Equal Protection Clause of the Fourteenth Amendment, the plaintiffs stated at the PI Hearing that their claims also arise under the Due Process Clause.

4

support of which they filed a Memorandum (Docket No. 19), various exhibits (*id.*, Exs. A and B; Docket No. 20), and eleven affidavits (Docket Nos. 21-27, 29-32).[5] The plaintiffs also filed a First Amended Complaint, which added Bell as a plaintiff and added or amended certain allegations. In opposition to the plaintiffs' motion, the defendants filed a Response (Docket No. 16) and supporting exhibits (Docket No. 17), including the Declaration of Tennessee Division of Elections Staff Attorney Andrew Dodd (*id.*, Ex. 1) and the Declaration of Mark Goins (*id.*, Ex. 5), both of which attached multiple exhibits.[6]

After receiving the parties' submissions, the court ordered the parties to brief two additional issues (Docket No. 35), which they did. (Docket Nos. 37 and 38.) The defendants also filed the Supplemental Declaration of Andrew W. Dodd (Docket No. 31, Attachment 1), which responded to the addition of Bell as a plaintiff in the First Amended Complaint and the Affidavit of Ora Lee Sanders that the plaintiffs had filed in support of their motion.

On July 31, 2012, the court held a hearing on the motion. At the hearing, the plaintiffs clarified that they were only pursuing an "as applied" challenge to the defendants' actions with regard to § 2-7-112(c), not a facial challenge to the TVIDL itself. At the conclusion of the hearing, the court, ruling from the bench, denied the motion, informing the parties that it would issue a written opinion further articulating the basis for its decision.

## **STANDARD OF REVIEW**

---

[5]At the PI Hearing, the plaintiffs withdrew the Affidavit of Robert White (Docket No. 32), which had been filed without the attachments referenced therein.

[6]The defendants have also filed a separate Motion to Dismiss (Docket No. 18). This Memorandum and the accompanying Order relate only to the plaintiffs' Second Motion for Preliminary Injunction, not the pending Motion the Dismiss. Therefore, unless otherwise noted, as used herein, "motion" shall refer to the Plaintiffs' Second Motion for Preliminary Injunction.

Preliminary injunctions are governed by Fed. R. Civ. P. 65(a) and are considered preventive, prohibitory, or protective measures taken pending resolution on the merits. *See Clemons v. Bd. of Educ.*, 228 F.2d 853, 856 (6th Cir. 1956). Preliminary injunctions are considered extraordinary relief, the issuance of which requires great caution, deliberation, and sound discretion. *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Int'l Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972).

In determining whether to grant the plaintiffs' request for a preliminary injunction, the court must consider: (1) the plaintiffs' likelihood of prevailing on the merits of the case; (2) whether the plaintiffs will suffer irreparable injury if the injunction is not granted; (3) whether granting the injunction will cause potential harm to others; and (4) the impact of the injunction upon the public interest. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *Parker v. U.S. Dep't of Agric.*, 879 F.2d 1362, 1367 (6th Cir. 1989); *Mason Cnty. Med. Ass'n. v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). The factors "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief," *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1984), nor is any one factor controlling. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

## ANALYSIS

### I. Overview

The defendants have argued that the plaintiffs' request for preliminary injunction should be denied on both jurisdictional and substantive grounds. Because of the presence of a federal constitutional concern – the fundamental right to vote – and the time sensitivity of the issues presented, the court has assumed, for purposes of ruling on the motion, that it has federal

question jurisdiction over this case and addresses the motion on its merits.[7]

Although the plaintiffs' legal theories are not a model of clarity, the court interprets the gravamen of the plaintiffs' claims as alleging that the defendants applied the TVIDL in a manner that impinged on their fundamental right to vote, in violation of the Fourteenth Amendment's Equal Protection and/or Due Process Clauses and the Tennessee Constitution.[8] The parties' central dispute concerns whether it was lawful for the defendants to inform the Shelby County Election Commission that the MPL Photo ID Cards are not permissible forms of identification under the TVIDL, thereby preventing Bell and Turner-Golden from casting regular ballots. The plaintiffs argue that the MPL Photo ID Cards *are* allowable under the TVIDL, and that, therefore, the defendants' directives impermissibly infringed their right to vote. The plaintiffs have specifically stated that they are only challenging the defendants' attempted application of

---

[7]The parties will have the opportunity to further brief these issues in the context of the defendants' pending Motion to Dismiss.

Also, the defendants have argued that the City of Memphis must be dismissed, because, under the United States Constitution, a political subdivision may not sue the state of which it is a part. *See Greater Heights Acad. v. Zelman*, 522 F.3d 678, 680 (6th Cir. 2008). At the PI Hearing, the plaintiffs did not address this argument. Although the court presumes that the City of Memphis indeed should be dismissed from this case on the basis urged by the defendants, the court will reserve judgment until the parties have fully briefed the Motion to Dismiss. At any rate, even if the City of Memphis were dismissed, plaintiffs Turner-Golden and Bell are proper plaintiffs.

[8]Although the plaintiffs did not plead their claims for declaratory and injunctive relief under any particular state or federal law, it is at least within the court's power to issue the requested declaratory relief under federal law. (*See* 28 U.S.C. § 2201(a) (2012).) Indeed, at the hearing, the defendants did not argue that the court lacks authority to issue declaratory and/or injunctive relief with respect to plaintiffs' claims to the extent they implicate potential federal constitutional violations. Accordingly, for purposes of ruling on the motion, the court need not reach the defendants' argument that, pursuant to state sovereign immunity, the plaintiffs are not entitled to pursue declaratory relief with respect to any "pendent" state law claims.

7

the TVIDL, not the law itself. Therefore, without deciding the issue, the court will assume, for purposes of ruling on the motion, that the TVIDL is constitutional under both federal and Tennessee law.

The plaintiffs essentially argue that, because (under their interpretation) the MPL Photo ID Cards are valid forms of identification recognized by the TVIDL, it was unconstitutional for the defendants to instruct election officials to refuse to accept that form of photo ID at the polls. Although the plaintiffs have not precisely articulated their federal constitutional claims, the court construes the plaintiffs' claims as follows: (a) by instructing elections officials not to accept MPL Photo ID Cards, which (the plaintiffs contend) are valid under the TVIDL, the defendants impermissibly denied them the right to vote relative to holders of other forms of photo ID that are also valid under the TVIDL, in violation of the Equal Protection Clause; and/or (b) by instructing elections officials not to accept the MPL Photo ID Cards, which are valid under the TVIDL, the defendants denied the plaintiffs due process of law, in violation of the Due Process Clause.[9]

Accordingly, the plaintiffs' federal constitutional claims rest on the assumption that MPL Photo ID Cards are valid under TVIDL, a point that the defendants vigorously contest. Thus, in order to resolve whether the defendants' actions in implementing the TVIDL resulted in a

---

[9]With respect to the plaintiffs' claims under the Tennessee Constitution, the plaintiffs cite to Art IV, §1, which outlines several requirements for voting (age, citizenship, residency, and registration), states that "[a]ll such requirements shall be equal and uniform across the state, and there shall be no other qualification attached to the right of suffrage," and empowers the General Assembly to enact "laws securing the purity of the ballot box." *Id.* Although the plaintiffs have not cited any case law specific to this provision, the court assumes, for purposes of ruling on the request for a preliminary injunction only, that the plaintiffs have articulated cognizable claims under Art. IV, § 1 that run with the federal constitutional claims.

potential constitutional violation, the court must determine whether the TVIDL allows the MPL Photo ID Cards as acceptable "evidence of identification."

## II.     The Tennessee Voter ID Law

In 2011, the Tennessee Legislature revised its voter registration laws to include a photo ID requirement, codified within Tenn. Code Ann. § 2-7-112 and effective January 1, 2012.[10] In relevant part, the law provides as follows:

> (a)(1)  [T]he voter shall present to the precinct registrar one (1) form of identification that bears the name and photograph of the voter.
>         . . .
>
>> (B)     To verify the voter's identification, the voter shall supply evidence of identification specified in subsection (c).
>>         . . .
>
> (c)     For purposes of verifying the person's identification on the application for ballot, "evidence of identification" shall be:
>
>> (1)    A Tennessee driver license;
>>
>> (2)    (A)     Except as provided in subdivision (c)(2)(B), a valid identification card issued by a branch, department, agency or entity of this state, any other state, or the United States authorized by law to issue personal identification; provided, that such identification card contains a photograph of the voter;
>>
>>        (B)     An identification card issued to a student by an institution of higher education containing a photograph of a student shall not be evidence of identification for purposes of verifying the person's identification on the application for ballot.

---

[10]The legislature enacted two subsequent amendments. *See* 2011 Public Acts, c. 348, § 1, eff. June 1, 2011; 2012 Pub. Acts c. 938, § 2, eff. May 10, 2012. Unless otherwise noted, all references to the "TVIDL" refer to the current version of the law, Tenn. Code Ann. § 2-7-112 (2012).

9

(*Id.* §§ 2-7-112(a)(1) and (c)(1)-(2).) In the event that a voter cannot present a qualifying photo ID at the polls, the law permits the voter to cast a provisional ballot, which is kept segregated from the other ballots. *Id.* § 2-7-112(e). In that case, the voter has two business days after the election to provide qualifying evidence of identification; however, if the voter fails to provide the necessary photo ID within that time frame, the ballot is marked "rejected" and is not counted. (*Id.*)[11]

## II. Interpretation of the TVIDL

The plaintiffs argue that, for purposes of § 2-7-112(c)(2)(A), the MPL constitutes an "entity of this state . . . authorized by law to issue personal identification." The parties agree that the term "entity of this state" is undefined and that it is sufficiently ambiguous to require the application of traditional canons of statutory construction to determine its meaning.

### A. Applicable Law of Statutory Construction

The Tennessee Supreme Court in *Waters v. Farr*, 291 S.W.3d 873 (Tenn. 2009), set forth the standard of review for construction of a Tennessee statute:

> When called upon to construe a statute, we must first ascertain and then give full effect to the General Assembly's intent and purpose. Our chief concern is to carry out the legislature's intent without either broadening or restricting the statute beyond its intended scope. Every word in a statute is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature. When the statutory language is clear and unambiguous, we apply its plain meaning without complicating the task. When a statute is ambiguous, however, we may reference the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. We presume that the General Assembly was aware of its prior enactments and knew the state of the law at the time it passed the legislation.

---

[11]The TVIDL also contains certain exceptions to the photo ID requirement. *See* Tenn. Code Ann. §§ 2-7-112(a)(1) (hospitalized individuals and nursing home residents) and 2-7-112(f) (individuals with a religious objection to be being photographed and indigent persons).

*Id.* at 881-82 (internal quotations and citations omitted); *see also Hooker v. Haslam*, No. M2012-01299-COA-R3-CV, 2012 WL 3061881, at *3-*4 (Tenn. Ct. App. July 27, 2012) (citing *Waters*); *Chapman v. Sullivan Cnty.*, 608 S.W.2d 580, 581-82 (Tenn. 1980) (where it was unclear whether the term "municipality" was coextensive with the term "government entity" under Tenn. Code Ann. § 23-3314, the "proper interpretation is left open to dispute" and "it is appropriate to turn to the legislative history of the statute for guidance."); *Humphrey v. State*, No. E2003-00617-COA0R3-CV, 2003 WL 22046152, at *2 (Tenn. Ct. App. Aug. 28, 2003) (determining that, where meaning of term "governmental entity" within Tenn. Code Ann. § 20-1-119(g) was ambiguous, it was appropriate to "turn to the legislative history to resolve this ambiguity.")

The parties have also relied on certain other doctrines of statutory interpretation. Under the principle of *ejusdem generis*, general words that follow specific words are construed as applying to the same class or kind of items as the specific words that precede them. *Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2009) ("Where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated."). Also, under the principle of *expressio unius est exclusio alterius* ("to express one thing is to exclude others"), the inclusion of language in one part of a statute implies the exclusion of other categories of the same nature. *See, e.g.*, *Rich v. Tenn. Bd. of Med. Exam'rs*, 350 S.W.3d 919, 927 (Tenn. 2011) (under *expressio unius* doctrine, where statute provided for only one type of exception from requirement that defendant Health Board articulate the relevant standard of care in its deliberations, defendant could not rely on an additional type of exception to that requirement that was not enumerated in the statute).

### B.  Application

The plaintiffs have articulated essentially two bases on which they believe that the MPL falls within the purview of § 2-7-112(c)(2)(A).  First, they argue that the term "entity of this state" includes all local government entities and their instrumentalities.  Second, they argue that, even if the term "entity of this state" only includes entities that are effectively *state* entities, rather than local ones, the MPL constitutes such an entity.

> 1. Whether "Entity of This State" Includes Local Government Entities and/or Their Instrumentalities.

The plaintiffs argue that, had the legislature intended to restrict the scope of the statute only to "state entities" – that is, entities operated or substantially controlled by the state – it would have used the term "entity of *the* state," rather than "entities of *this* state."  They reason that, because the MPL is a public entity contained within "this state" (*i.e.*, Tennessee), it constitutes an "entity of this state" for purposes of § 2-7-112(c)(2)(A).

The court is not persuaded by the plaintiffs' interpretation.  First, the terms preceding "entity of this state" provide as follows: "a valid identification card issued by a branch, department, agency or entity of this state . . . ."  This provision is more naturally read as a "branch *of this state*, a department *of this state*, an agency *of this state*, or an entity *of this state*."  Branches, departments, and agencies are all parts of Tennessee state government, not local government entities such as municipalities and counties.  Thus, under the doctrine of *ejusdem generis*, the court interprets the term "entity of this state" as referring to additional state government entities (other than a branch, a department, or an agency), not local government entities.  Furthermore, the language following the term "entity of this state" reinforces the court's interpretation.  The statute provides that an identification card issued by "a branch, department,

12

agency or entity of *this state*, any *other state*, or the *United States*" may be valid. Taken in context, the use of the "this" simply appears to distinguish "this" state (Tennessee), from any "other" state, and from the "United States." Therefore, the court does not find that the use of the term "the" instead of "this" should be afforded the significance urged by the plaintiffs.[12]

The legislative history of the statute is muddled: the parties admit that the 2011 floor debates on the TVIDL provide little insight into the legislature's intent. However, after the law was passed, the legislature considered and rejected several potential amendments to the TVIDL that sought to *add* certain forms of photo IDs issued by municipal and county governmental entities to the scope of § 2-7-112(c)(2)(A). *See* 2011 TN H.B. 2241, Tenn. 107th General Assembly (introduced January 10, 2012) (seeking to add section permitting a "valid [photo] identification card issued by a Tennessee *county or municipality* to an employee of that county of municipality" as acceptable "evidence of identification") (emphasis added); 2011 TN H.B. 2177, 107th General Assembly (introduced November 1, 2011) (seeking to add as acceptable "evidence of identification" a "valid photo identification card issued free of charge by the *county* election commission in which a person is registered to vote") (emphasis added).[13] The fact that

---

[12]The plaintiffs also argue that the exception in Part (B) of § 2-7-112(c)(2) favors their interpretation of the statute. Part (B) states that "[a photo] identification card issued to a student by an institution of higher education" does not constitute "evidence of identification." Tenn. Code Ann. § 2-7-112(c)(2)(B). The plaintiffs argue that Part (B) recites the only type of photo ID from *any* governmental entity – federal, state, or local – that is not allowed as acceptable "evidence of identification" under Part (A). However, the court's interpretation of Part (A) is entirely consistent with Part (B): Part (B) merely provides that, of types of photo IDs issued by the *federal* or *state* entities that are subject to Part (A), only student photo IDs issued by institutes of higher education – which would otherwise satisfy the statute – do not constitute valid evidence of identification.

[13]It appears that H.B. 2241 failed to be recommended for passage to the General Assembly's state and local government committee, and that H.B. 2177 did not move through the

the 107th General Assembly – the same General Assembly that had passed the original version of the TVIDL on May 30, 2011 – refused to *expand* the TVIDL to permit counties and municipalities to issue certain forms of acceptable photo ID strongly suggests that, in the view of the legislature, the TVIDL did not encompass counties and municipalities in the first place.[14]

In sum, the court finds that the term "entities of this state" within § 2-7-112(c)(2)(A) does not include local government entities and their instrumentalities.

        2.        <u>Whether the MPL Nevertheless Constitutes an "Entity of This State"</u>

The plaintiffs also argue that, even if the statute is construed to mean that "entities of this state" effectively means "state entities," the MPL constitutes that type of entity. In determining whether an entity is an instrumentality of the state of Tennessee, the court must consider the

---

General Assembly for any type of approval. (*See* Docket No. 16, Ex. 2 (legislative history of H.B. 2241); *id.* at p. 27 n.8 (defendants' representations concerning legislative history of H.B. 2177).)

[14]The parties have also cited to a host of other Tennessee statutes involving the term "state governmental entities," "state entities," and other similar language. Although the court agrees with plaintiffs that the relevance of language other than the precise term "entity of this state" may be limited – in fact, none of the statutes cited by other party utilize that exact term – the cited statutes suggest that, where the legislature intends to include local governmental entities and/or instruments of local government within a statutory definition, it does so explicitly and often distinguishes local government entities from state governmental entities. *See, e.g.*, Tenn. Code. Ann. § 58-8-102(a) (2012) ("governmental entity" means "any political subdivision of the state, including . . . any incorporated city or town, metropolitan government, county, . . . [or] any instrumentality of government created by one (1) or more of these named governmental entities . . . ."); *id.* § 68-11-201(32) ("person" means "any . . . state *or local* governmental agencies and entities") (emphasis added); *id.* § 9-21-151(a)(6) ("'Public entity' means the state, a state agency, a local government instrumentality, or any other authority, board, district, instrumentality, or entity *created by the state*, a state agency, *local government*, *a local government instrumentality*, or combination, thereof . . .") (emphases added); *id.* § 13-13-205(a) (providing separate definitions for "the municipality," "the county" and "any state entity"). To the extent these other statutes are relevant, they suggest that, in the absence of any language within § 2-7-112(c)(2)(A) specifying or implying the inclusion of local government entities and their instrumentalities, the court should not interpret the statute as including them.

14

following factors:

>   1.   Whether the enabling statute exhibits a legislative intent to regard the entity as a state agency.
>
>   2.   Whether the State or political subdivision thereof is directly involved in the operation, supervision and control of the entity.
>
>   3.   Whether the entity serves as a conduit through which the State acts to carry out a public or governmental function.
>
>   4.   Whether the state appropriates funds to the entity.

*Hastings v. N. Cent. Human Res. Agency*, 829 S.W.2d 679, 682 (Tenn. Ct. App. 1991) (internal quotations and citations omitted).

In *Hastings*, the court considered, *inter alia*, whether the South Central Human Resource Agency ("SCHRA"), which provided human resource services for at least 12 counties, constituted a "state agency." *Id.* at 679-81. The SCHRA had been created and authorized under a specific enabling statute, the Human Resource Agency Act of 1973, Tenn. Code Ann. § 3-26-101, which had authorized the creation of four metropolitan human resource agencies and up to nine rural human resource agencies with specific geographical scopes. *Id.* at 682. The statute specified that "[i]t is the further intent of this chapter that the agencies so created may be the delivery system for human resources . . . ." *Id.* The statute established a governing board, comprised of local officials, county officials, one state representative, and one state senator. *Id.* at 682 n.2. The statute also required the governing board to establish a policy council that would exercise certain enumerated powers, including the power to approve overall program plans and to ensure compliance therewith. *Id.* at 682. Furthermore, the SCHRA was subject to state control and held itself out as a state agency in a variety of ways. It was required to prepare and submit yearly reports of its activities to the Governor, the General Assembly, and the

15

Commissioner of Finance and Administration; it was subject to an annual audit by the State Treasurer Comptroller; it could not receive state appropriations until they were reviewed and approved by the Governor and Commissioner of Finance and Administration; and it utilized vehicles bearing the Tennessee state seal and State of Tennessee government license plates. Under these circumstances, the *Hastings* court found that the SCHRA and other human resource agencies promulgated under the Act were "not left to their own devices, but instead are controlled and monitored by the state," *id.* at 683, and that, based on "the purpose and function of this agency . . . it is merely a conduit through which the state serves the public." *Id.* at 684. Based on these findings, the court concluded that the SCHRA constitutes a state agency. *Id.* at 685.

Applying the *Hastings* factors here, the court finds that the MPL is not a state entity. As the plaintiffs conceded at the PI Hearing, the MPL was not created by an enabling statute; thus, with respect to the first factor, there is no enabling statute to consider in the first place. With respect to the second factor, although the Tennessee Code contains some provisions relating to libraries (*see* Tenn. Code § 10-1-101 *et seq.*), those provisions provide for negligible direct state involvement in or review of the activities of local libraries, which, in contrast to the SCHRA in *Hastings*, are largely "left to their own devices." *See Hastings*, 829 S.W.2d at 683.[15] Furthermore, in contrast to the circumstances presented in *Hastings*, the MPL is not subject to state audits, and there is no indication in the record that any state officials are directly involved

---

[15]Moreover, it appears that the MPL, which was originally established as a non-profit entity in 1888, is not even subject to some of the requirements set forth in § 10-1-101 *et seq.*, the precursor to which was not enacted until 1929. (*See* Docket No. 16, at pp. 30-31 (describing history and status of MPL relative to legislative history of Tennessee statutes concerning libraries).)

16

in its operation or oversight. As to the third factor, while library services surely provide a beneficial service to patrons, the provision of library services does not constitute a traditional state government function. Moreover, the statutes cited by the plaintiffs do not establish that the state is utilizing the MPL "as a conduit" through which the State of Tennessee acts; indeed, the applicable state statutes suggest otherwise.[16] Finally, although the MPL has received at least some Tennessee taxpayer-funded grants reflecting a small fraction of its operating budget,[17] it does not receive direct state appropriations. Thus, all of the *Hastings* factors weigh strongly against a finding that the MPL is a state instrumentality.

In sum, the court finds that the MPL does not constitute an "entity of this state" for purposes of the TVIDL. Thus, the individual plaintiffs were not entitled to vote using the MPL Photo ID Cards, which are not acceptable "evidence of identification" under the TVIDL. Accordingly, pursuant to the terms of the TVIDL, the defendants appropriately instructed the

---

[16] For example, Tenn. Code Ann. § 10-3-102 authorizes a county, city, or library governing body to levy taxes or otherwise apply county or municipal funds to a local library, "such a library service being declared to be *a county or municipal service*." (Emphasis added); *see also id.* § 10-3-104 (library governing board has "the power to direct all the affairs of the library" and "shall make annual reports to *the county legislative body and/or city governing body*") (emphasis added).

[17] Contracts conditioning certain recent state grants to the MPL, which defendant Hargett signed on behalf of the State of Tennessee, contain the following provision relating to potential liability under the Tennessee Governmental Tort Liability Act ("TGTLA"): "The Grantee, *being a political subdivision of the state*, is governed by the provisions of the [TGTLA], for causes of action sounding in tort." (Docket No. 26 at pp. 29-40) (emphasis added). The government's representation in those contracts is not inconsistent with the defendants' position here: the fact that an entity may constitute a political subdivision of the state – such as a municipality or county – does not mean that the political subdivision is a "state entity" for all purposes. At any rate, the grant contracts related to sums reflecting a small fraction of the MPL's operating budget, and do not, standing alone, outweigh the *Hastings* factors, which otherwise compel a finding that the MPL is not a state instrumentality.

Shelby County Election Commission not to accept the MPL Photo ID Cards.[18]

### III.     Application of the Preliminary Injunction Factors

The court has determined that the plaintiffs have not demonstrated a substantial likelihood of success on the merits. Although that factor alone would be sufficient to deny the requested relief, the court also finds that: (1) the individual plaintiffs are unlikely to suffer irreparable harm in the absence of preliminary relief, because they were able to cast provisional ballots and, because they are in the DOS's computer system, they can obtain the necessary photo ID from the DOS, without charge, by Monday, August 6, their statutory deadline to present a photo ID to election officials; (2) the balance of the equities favors the defendants, because they interpreted the scope of the TVIDL correctly and it would have been unnecessarily disruptive for the court to interfere with the election process, particularly where the plaintiffs are unlikely to succeed on the merits; and (3) an injunction is not in the public interest, because, if this court had issued the requested injunction and were later overruled, it would be impossible to determine which voters had utilized (or attempted to utilize) the MPL Photo ID Cards as their "evidence of identification" for voting purposes. By contrast, without the injunction, the plaintiffs' ballots (and presumably those of any similarly situated voters also attempting to utilize MPL Photo ID Cards as their evidence of idenfication) were cast as provisional ballots, which are kept

---

[18]As the court stated at the PI Hearing, although the defendants interpreted the TVIDL correctly in instructing the Shelby County Election Commission, the court notes that the TVIDL's requirements are anomalous in certain respects. As the plaintiffs have pointed out, expired hunting licenses and expired boating licenses from other states that apply *less stringent* standards than those applicable in Tennessee constitute satisfactory "evidence of identification" under the TVIDL, but photo identification cards bearing better, more current indicia of reliability issued by a city or county governments within Tennessee – such as the MPL Photo ID Cards at issue here – do not.

segregated from the other ballots and could be addressed separately, if ultimately necessary.

## **CONCLUSION**

For the reasons stated herein, the plaintiffs' Second Application for Preliminary Injunction will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge